RONALD J. TENPAS
Acting Assistant Attorney General
Environment and Natural Resources Division
**UNITED STATES DEPARTMENT OF JUSTICE**

JEAN E. WILLIAMS, Chief
KRISTEN L. GUSTAFSON, Senior Trial Attorney
Wildlife and Marine Resources Section
GUILLERMO MONTERO, Trial Attorney
Natural Resources Section
Environment & Natural Resources Division
**UNITED STATES DEPARTMENT OF JUSTICE**
Benjamin Franklin Station - P.O. Box 7369/ P.O. Box 663
Washington, D.C. 20044
(202) 305-0211 (tel.) / (202) 305-0443 (tel.)
(202) 305-0275 (fax)/ (202) 305-0274 (fax)
Kristen.Gustafson@usdoj.gov
Guillermo.Montero@usdoj.gov

**Counsel for Defendants**

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL, INC., et al., | Civ. Action No. 07-4771-EDL |
| Plaintiffs, | DEFENDANTS' MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR LEAVE TO SUBMIT CLASSIFIED DECLARATION FOR *EX PARTE* AND *IN CAMERA* REVIEW |
| v. | |
| CARLOS GUTIERREZ, SECRETARY OF THE UNITED STATES DEPARTMENT OF COMMERCE, et al. | |
| Defendants. | Judge: Hon. Elizabeth D. Laporte
Ctrm: E
Hearing Date: December 11, 2007
Time: 9 a.m. |

Mtn for leave to submit classified decl for ex parte, in camera review
NRDC v. Gutierrez, Case No. 07-4771-EDL

**TABLE OF CONTENTS**

                                                                                          **PAGE**

MOTION .............................................................. 1

STATEMENT OF ISSUES ................................................. 1

MEMORANDUM .......................................................... 1

I.     INTRODUCTION ................................................. 1

II.    BACKGROUND ................................................... 4

III.   ARGUMENT ..................................................... 4

        A.    CLASSIFIED NATIONAL SECURITY INFORMATION IS NECESSARY TO THE PRELIMINARY INJUNCTION DETERMINATION .................... 4

        B.    COURTS ROUTINELY REVIEW CLASSIFIED NATIONAL SECURITY INFORMATION IN CAMERA AND EX PARTE ........................... 6

        C.    RELIANCE UPON CLASSIFIED INFORMATION THAT IS NOT SUBJECT TO PUBLIC REVIEW IS EXPRESSLY CONTEMPLATED BY THE NATIONAL ENVIRONMENTAL POLICY ACT ..................... 8

        D.    IN CAMERA AND EX PARTE REVIEW IS NECESSARY BECAUSE NEITHER PLAINTIFFS NOR THE PUBLIC ARE ENTITLED TO CLASSIFIED NATIONAL SECURITY INFORMATION ......................................... 10

        E.    CLASSIFIED INFORMATION SUBMITTED FOR IN CAMERA AND EX PARTE REVIEW WILL BE LIMITED AND NARROWLY TAILORED ................ 12

        F.    CERTAIN SECURITY ARRANGEMENTS ARE NECESSARY ................. 12

IV.   CONCLUSION .................................................. 14

# TABLE OF AUTHORITIES

**PAGE**

CASES

American-Arab Anti-Discrimination Committee v. Reno, 70 F.3d 1045, 1069
  (9th Cir. 1995) .................................................................. 6

Anti-Fascist Committee v. McGrath, 34 U.S. 123, 170 (1951) ........................... 6

Black v. Sheraton Corp., 564 F.2d 531, 544-45 (D.C. Cir. 1977) ....................... 7

Brazil v. Dep't of the Navy, 66 F.3d 193, 195 (9th Cir. 1995) ..................... 10,11

Dellums v. Powell, 561 F.2d 242, 250 (D.C. Cir. 1977) ................................ 7

Dep't of Navy v. Egan, 484 U.S. 518, 530 (1988) ................................... 5,10

Dorfmont v. Brown, 913 F.2d 1399, 1401 (9th Cir. 1990) ............................ 10,11

Ellsberg v. Mitchell, 709 F.2d 51, 57 n.31 (D.C. Cir. 1983) ......................... 11

Frost v. Perry, 919 F. Supp. 1459, 1467 (D. Nev. 1996) .............................. 9

Gilligan v. Morgan, 413 U.S. 1, 10 (1973) ........................................... 5

Haig v. Agee, 453 U.S. 280, 292 (1981) ....................................... 6, 11, 12

Halkin v. Helms, 598 F.2d 1, 9 (D.C. Cir. 1978) .................................... 11

Halperin v. CIA, 629 F.2d 144 (D.C. Cir. 1980) ..................................... 11

Halperin v. Kissinger, 807 F.2d 180, 188 (D.C. Cir. 1986) .......................... 10

Hudson River Sloop Clearwater v. Dep't of Navy, 891 F.2d 414 (2d Cir. 1989) ......... 9

Kasza v. Browner, 133 F.3d 1159 (9th Cir. 1998) ..................................... 6

Meridian International Logistics, Inc., v. United States, 939 F.2d 740, 745
  (9th Cir. 1991) ............................................................... 7,12

Molerio v. FBI, 749 F.2d 815, 825 (D.C. Cir. 1984) .................................. 6

Natural Res. Def. Council v. Winter ("NRDC v. Winter"), — F.3d —, 2007
WL 2481465 at *2 (9th Cir. Aug. 31, 2007) ..................................... 2, 3, 5

Nat'l Council of Resistance of Iran v. Dep't of State, 251 F.3d 192 (D.C. Cir. 2001) ... 6

Northern Cheyenne Tribe v. Hodel, 851 F.2d 1152, 1157 (9th Cir. 1988) ............... 6

NRDC  v. Evans, 279 F. Supp.2d 1129, 1190 (N.D. Cal. 2003) .......................... 3

NRDC v. Evans, 232 F. Supp.2d 1003, 1054 (N.D. Cal. 2002) ........................... 3

Pollard v. FBI, 705 F.2d 1151, 1153 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Regan v. Wald, 468 U.S. 222, 243 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Salisbury v. United States, 690 F.2d 966, 973 n.3 (D.C. Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . 6

Taylor v. Westly, 488 F.3d 1197, 1200 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,5

Water Keeper Alliance v. Dep't of Defense, 271 F.3d 21, 35 (1st Cir. 2001) . . . . . . . . . . . . . . . 6

Weberman v. National Security Agency, 668 F.2d 676, 678 (2d Cir. 1982) . . . . . . . . . . . . . . . 8

Webster v. Doe, 486 U.S. 592 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Weinberger v. Catholic Action of Hawaii, 454 U.S. 139, 141-42 (1981) . . . . . . . . . . . . . . . . . . 8

Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5


STATUTES

5 U.S.C. §§ 552(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
42 U.S.C. § 4321 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
42 U.S.C. § 4332(2)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

REGULATIONS

28 C.F.R. § 17.17(**a**) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
28 C.F.R. § 17.17(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
28 C.F.R. § 17.17(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
28 C.F.R. § 17.17(c)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
28 C.F.R. §§ 17.17(c)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
28 C.F.R. § 17.17(c)(7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
28 C.F.R. § 17.17(c)(8) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
28 C.F.R. § 17.17(c)(9) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
28 C.F.R. § 17.46(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
40 C.F.R. § 1506.6(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

MISCELLANEOUS

Executive Order 12958 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
60 Fed. Reg. 19825 (April 17, 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**MOTION**

For the reasons stated below, Defendants respectfully move for leave to submit certain classified information to the Court for in camera and ex parte review pursuant to the procedures described herein and in the attached proposed order. The undersigned counsel has conferred with counsel for the Plaintiffs with respect to this motion, and Plaintiffs have indicated that they intend to oppose the motion.

**STATEMENT OF ISSUES**

The issue before the Court is whether the Court may review certain narrowly-tailored classified information relating to national security in camera and ex parte when considering the balance of the harms if the government were preliminarily enjoined from employing the Surveillance Towed Array Sensor System ("SURTASS") Low Frequency Active Sonar ("LFA") system in any of the waters currently authorized by the National Marine Fisheries Service's August 15, 2007 Letters of Authorization.

**MEMORANDUM**

**I.  INTRODUCTION**

This memorandum explains that the Court's review of certain classified national security information in camera and ex parte is warranted. It is well-established that district court judges have the discretion to tailor a proceeding as necessary to accomplish a just result, including the discretion to conduct in camera and ex parte review of sensitive information in appropriate circumstances. In fact, in the previous related matter, Natural Resources Defense Council v. Evans, Case No. 02-cv-3805-EDL, this Court conducted just the sort of in camera, ex parte review of a classified declaration that the United States now requests. As Defendants explain below, this case, like the one that preceded it, presents precisely the type of circumstances that justify the exercise of this type of discretion.

On October 12, 2007, Plaintiffs filed a motion with this Court seeking a preliminary injunction to prevent the United States Department of the Navy ("Navy") from employing SURTASS LFA in a manner inconsistent with the now-expired permanent injunction that this Court issued in the prior case. In assessing the Plaintiffs' motion for a preliminary injunction and the Defendants' opposition thereto,

1 the Court will examine certain familiar equitable criteria for granting preliminary injunctive relief: "(1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases)." Taylor v. Westly, 488 F.3d 1197, 1200 (9th Cir. 2007). Importantly, when the public interest is involved, as it is here, a court must consider and determine whether the balance of public interests supports the issuance or denial of an injunction. Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982) ("In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction."); Natural Res. Def. Council v. Winter ("NRDC v. Winter"), — F.3d —, 2007 WL 2481465 at *2 (9th Cir. Aug. 31, 2007) ("The district court was required to consider, not only 'balance of hardships' as between the plaintiffs and the Navy as an Executive Branch agency, but also the 'public interest' in having a trained and effective Navy.").

The public interest, in the form of the protection of national security and the enhancement of military preparedness, is prominent in this matter, as it was in the previous case. Defendants anticipate that they will submit declarations by Navy officials that will explain the harm to the public interest that would be caused by the Plaintiffs' requested injunction. Observing a similar process to the one the United States followed in the prior lawsuit, this information would be presented to the Court in two forms: (1) in an unclassified declaration that will set forth the importance of SURTASS LFA sonar and the reasons that its use cannot be restricted; and (2) in a limited, narrowly tailored classified declaration, subject to in camera and ex parte review, that will provide detailed information regarding the effectiveness of the system against modern quiet submarines, the importance of the system to the Navy, and the potential threats faced by the Navy if it is forced to restrict its employment of SURTASS LFA.[1]

---

[1] Defendants believe that the classified declarations will be self-explanatory, not requiring specific briefing or argument by Defendants unless the Court requests further explanation. This approach does not indicate that the information lacks importance to the Court's inquiry – rather because the classified declarations will provide important detail supporting the unclassified material submitted to the Court and addressed in Defendants' brief, discussion of the precise details of the classified information should not be necessary. Moreover, any written argument regarding the classified information would have to take place on secured computers and any discussion of the specific content of the classified declarations would have to take place in a closed hearing with only those possessing the necessary clearances,

1    Like this court, other courts have routinely permitted in camera and ex parte review of classified

2 harms declarations in cases involving national security matters. Indeed, the Ninth Circuit in NRDC v.

3 Winter, 2007 WL 2481465, recently reviewed a classified declaration in a virtually identical context and

4 under substantially the same procedures requested here. See id. at *2 n. 18 ("We reviewed classified

5 documents submitted by the Navy to the district court and considered them in coming to our decision.")

6 In addition, the district judge in NRDC v. Winter, 07-cv-335-FMC (C.D. Cal.) reviewed the classified

7 harms declaration in camera and ex parte, under the same protocols and procedures articulated below.

8    Moreover, if this in camera and ex parte review occurs as Defendants suggest, Plaintiffs' ability

9 to present their case will not be infringed significantly because they will receive in an unclassified form

10 an explanation of the need to use SURTASS LFA sonar and the reasons its use cannot be delayed or

11 abated.[2]/ Thus, Plaintiffs' ability to present information essential to their case will not be significantly

12 hampered. In contrast, absent review of the Classified Declaration, the Court will be unable to weigh all

13 information relevant to its analysis, as is required by controlling Ninth Circuit precedent. See NRDC v.

14 Winter, 2007 WL 2481465, at *2-3. The previous lawsuit over SURTASS LFA proves these very points.

15 The Court's in camera, ex parte review of the classified material submitted in that case provided the

16 Court with information highly pertinent to the public's compelling interest in national security, military

17 preparedness, and the safety of those serving in the military, considerations that factored into the Court's

18 ruling on relief. NRDC v. Evans, 279 F. Supp.2d 1129, 1190 (N.D. Cal. 2003); NRDC v. Evans, 232

19 F.Supp.2d 1003, 1054 (N.D. Cal. 2002). Therefore, Defendants respectfully request that the Court grant

20 the instant Motion pursuant to the procedures described herein and in the attached proposed order.

---

including a cleared court reporter. Any brief or transcript would be subject to the same handling and storage requirements as the classified declarations themselves. While these are not insurmountable problems, Defendants believe that they do not need to be confronted in this proceeding.

[2]/ In Natural Resources Defense Council v. Evans, Case No. 02-cv-3805-EDL, the Navy was able to submit a redacted version of the classified declaration (in addition to the classified and unclassified declarations) for this Court's and the plaintiffs' examination. The Navy cannot guarantee at this time that it will be able to provide a redacted version of the classified declaration in the instant case because the declaration has not been finalized and the final content of the declaration will bear significantly on whether any part of it can be declassified and released. This motion, however, should be granted regardless of whether a redacted version of the classified declaration can be provided because the Navy's unclassified declaration will ensure that the Plaintiffs' ability to present their case is not prejudiced.

Mtn for leave to submit classified decl for ex parte, in camera review
NRDC v. Gutierrez, Case No. 07-4771-EDL

-3-

## II. BACKGROUND

Executive Order 12958 "prescribes a uniform system for classifying, safeguarding, and declassifying national security information." 60 Fed. Reg. 19825 (April 17, 1995). Under the order, information may be classified if it is properly considered within one of the applicable categories, which includes information related to military plans, weapons systems or operations, Id. at 19827, and the originating agency determines that release of the information "could be expected to result in damage to the national security." Id. at 19826. Material is classified into one of three levels: confidential, secret and top secret.[3] Id. at 19826-7. Classified documents can contain both classified and unclassified material, and Executive Order 12958 requires that on "[e]ach classified document [the agency] shall, by marking or other means, indicate which portions are classified, with the applicable classification level, which portions are exempt from declassification [] and which portions are unclassified." 60 Fed. Reg. 19825, 19829.

## III. ARGUMENT
### A. CLASSIFIED NATIONAL SECURITY INFORMATION IS NECESSARY TO THE PRELIMINARY INJUNCTION DETERMINATION

Plaintiffs' Motion for Preliminary Injunction seeks to enjoin the Navy from "deployment or use of the Surveillance Towed Array Sensor System Low Frequency Active Sonar during the pendency of this action." Notice of Motion, and Motion and Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Preliminary Injunction ("Pls' Mot.") at 1 (Dkt. #14). In assessing the Plaintiffs' motion for a preliminary injunction and Defendants' opposition thereto, the Court must evaluate the traditional equitable criteria for granting preliminary injunctive relief, which are:

---

[3] Executive Order 12958 defines the different levels of classified materials as follows: "Top Secret" shall be applied to information, the unauthorized disclosure of which reasonably could be expected to cause exceptionally grave damage to the national security that the original classification authority is able to identify or describe. "Secret" shall be applied to information, the unauthorized disclosure of which reasonably could be expected to cause serious damage to the national security that the original classification authority is able to identify or describe. "Confidential" shall be applied to information, the unauthorized disclosure of which reasonably could be expected to cause damage to the national security that the original classification authority is able to identify or describe. Id. at 19826-7.

> (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases). The alterative test requires that a plaintiff demonstrate either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor.

Taylor v. Westly, 488 F.3d 1197, 1200 (9th Cir. 2007).

If the public interest is involved, a court must determine whether the balance of public interests supports the issuance or denial of an injunction. Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982) ("In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction."); Natural Res. Def. Council v. Winter ("NRDC v. Winter"), — F.3d —, 2007 WL 2481465, at *2-3 (9th Cir. Aug. 31, 2007) ("The district court was required to consider, not only 'balance of hardships' as between the plaintiffs and the Navy as an Executive Branch agency, but also the 'public interest' in having a trained and effective Navy.").

Indeed, where the public interest involves issues of national defense and military readiness, the Court's need to weigh and consider the public interest takes on increased significance. As the Supreme Court observed in Gilligan v. Morgan, 413 U.S. 1, 10 (1973), "it is difficult to conceive of an area of governmental activity in which the courts have less competence. The complex[,] subtle, and professional decisions as to the composition, training, equipping, and control of a military force are essentially professional judgments. . . ." See also Dep't of Navy v. Egan, 484 U.S. 518, 530 (1988) ("[U]nless Congress specifically has provided otherwise, courts traditionally have been reluctant to intrude upon the authority of the Executive in military and national security affairs."). In NRDC v. Winter, 2007 WL 2481465, at *2, the Ninth Circuit recently stayed an injunction issued by the district court because "[t]he district court did not give serious consideration to the public interest factor." As the Ninth Circuit explained:

> The public does indeed have a very considerable interest in preserving our natural environment and especially relatively scarce whales. But it also has an interest in national defense. We are currently engaged in war, in two countries. There are no guarantees extending from 2007 to 2009 or at any other time against other countries deciding to engage us, or our determining that it is necessary to engage other countries. The safety of the whales must be weighed, and so must the safety of our warriors. And of our country.

Mtn for leave to submit classified decl for ex parte, in camera review
NRDC v. Gutierrez, Case No. 07-4771-EDL

-5-

Id. at *3. See also Northern Cheyenne Tribe v. Hodel, 851 F.2d 1152, 1157 (9th Cir. 1988) ("In deciding whether to issue an injunction in which the public interest is affected, a district court must expressly consider the public interest on the record."); Water Keeper Alliance v. Dep't of Defense, 271 F.3d 21, 35 (1st Cir. 2001) (holding that the district court properly cautioned "against substituting judicial judgment for agency judgment in considerations of how and where the Navy should train."). Through the instant Motion, Defendants request that the Court review classified information contained in the proposed Classified Declaration, which addresses the harm to the public interest and the United States if the Navy is enjoined from using SURTASS LFA sonar. Classified national security information contained in the Classified Declaration explains and documents these particular and tangible harms to the public interest should an injunction issue.

Accordingly, the Classified Declaration bears directly on the issues which must be considered in connection with Plaintiffs' Motion for Preliminary Injunction and therefore is critical to the Court's ability to fully consider and balance the harm to the public interest should an injunction issue.

### B. COURTS ROUTINELY REVIEW CLASSIFIED NATIONAL SECURITY INFORMATION IN CAMERA AND EX PARTE

It is well established that Courts may review classified national security information in camera and ex parte in a variety of situations.[4] See, e.g., Kasza v. Browner, 133 F.3d 1159 (9th Cir. 1998) (in camera and ex parte review of declarations supporting state secrets privilege claim appropriate); Nat'l Council of Resistance of Iran v. Dep't of State, 251 F.3d 192 (D.C. Cir. 2001) (ex parte review appropriate in case involving national security concerns); Molerio v. FBI, 749 F.2d 815, 825 (D.C. Cir. 1984) (in camera and ex parte review used to resolve merits of constitutional claim); Salisbury v. United States, 690 F.2d 966, 973 n.3 (D.C. Cir. 1982) ("In the instant case, although resort to in camera

---

[4] Generally, our democratic adversarial system relies upon the sharing of information with both sides of the controversy. See American-Arab Anti-Discrimination Committee v. Reno, 70 F.3d 1045, 1069 (9th Cir. 1995) (quoting Anti-Fascist Committee v. McGrath, 34 U.S. 123, 170 (1951). However, "[t]he national interest requires that certain information be maintained in confidence through a system of classification in order to protect our citizens, our democratic institutions, and our participation within the community of nations. The unauthorized disclosure of information classified in the national interest can cause irreparable damage to the national security and loss of human life." 60 Fed. Reg. 40245 (Aug. 2, 1995). "It is 'obvious and unarguable' that no governmental interest is more compelling than the security of the Nation." Haig v. Agee, 453 U.S. 280, 307 (1981) (internal citations omitted).

1 affidavits was not strictly necessary, the public affidavits being sufficient to support the agency's claim, 2 the District Court was within its discretion in recognizing that important rights were at stake, and in 3 wishing to 'confirm[]' what the public affidavits already indicated."); Pollard v. FBI, 705 F.2d 1151, 4 1153 (9th Cir. 1983) (upholding in camera, ex parte review of documents withheld by the government 5 under FOIA). Ex parte review is derived from a court's inherent discretionary power to adopt those 6 procedures that are necessary and appropriate to a particular case.[5]/ See Meridian International Logistics, 7 Inc., v. United States, 939 F.2d 740, 745 (9th Cir. 1991) (recognizing the ability of a district court to 8 review information on an in camera and ex parte basis when necessary, even where the confidential 9 information resulted in dismissal of plaintiff's claims); Black v. Sheraton Corp., 564 F.2d 531, 544-45 10 (D.C. Cir. 1977); Dellums v. Powell, 561 F.2d 242, 250 (D.C. Cir. 1977); see also Weberman v. National 11 Security Agency, 668 F.2d 676, 678 (2d Cir. 1982) (affidavit reviewed on ex parte basis "simply 12 create[d] a more complete record"; the "risk presented by participation of counsel ... outweighs the utility 13 of counsel, or adversary process, in construing a supplement to the record.").

14 Here, Defendants will submit on an ex parte basis certain limited classified information relating 15 to the harm to the public interest that would be caused by an injunction. Accordingly, with the Classified 16 Declaration, the Court will have all the relevant factors before it to reach a decision on Plaintiffs' Motion 17 for Preliminary Injunction, and Plaintiffs' interests "are satisfied by the ex parte/in camera decision of 18 an impartial district judge." Meridian, 939 F.2d at 745.

---

[5]/ For example, were Plaintiffs to seek the classified information that Defendants intend to use in this matter pursuant to request made under the provisions of the Freedom of Information Act (FOIA), that request would be properly denied based on Exemption 1. Exemption 1 allows agencies to withhold production of materials that are "specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy and ... are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). Were Plaintiffs to seek judicial review of that decision, the court would conduct an in camera and ex parte review of the documents to determine whether the decision was proper, resolving the merits of the plaintiffs' claims without allowing the plaintiffs themselves to see the documents. Pollard v. FBI, 705 F.2d 1151, 1153 (9th Cir. 1983).

Mtn for leave to submit classified decl for ex parte, in camera review
NRDC v. Gutierrez, Case No. 07-4771-EDL

### C. RELIANCE UPON CLASSIFIED INFORMATION THAT IS NOT SUBJECT TO PUBLIC REVIEW IS EXPRESSLY CONTEMPLATED BY THE NATIONAL ENVIRONMENTAL POLICY ACT

Plaintiffs in this action bring several claims, including one under the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321, et seq. While NEPA requires public review of environmental impact statements (EISs), it expressly excludes from that requirement EISs, or parts of them, that would be protected from disclosure under FOIA. 42 U.S.C. § 4332(2)(C); see also 40 C.F.R. 1506.6(f) (last sentence). In this case, the classified information that Defendants believe necessary for the Court's review is submitted only to assist the Court's assessment of the public interest, as opposed to the potential merit of Plaintiffs' NEPA claim. Notwithstanding, it is well-established that a plaintiff has no right of access to classified information that supports the challenged agency decision merely by virtue of bringing a NEPA claim, further supporting Defendants' request for the Court to review the Classified Declaration ex parte and in camera.

The Supreme Court has confronted the issue of the availability of classified information to the plaintiff in a NEPA action. In Weinberger v. Catholic Action of Hawaii, 454 U.S. 139, 141-42 (1981), the Department of Navy constructed an ammunition and weapons storage facility capable of storing nuclear weapons and had prepared an environmental impact assessment ("EIA"). For national security reasons, and pursuant to its own regulations, the Navy did not disclose in the EIA whether it was actually storing nuclear weapons at the facility. Id. at 141. Prior to completion of the facility, a number of organizations challenged the failure of the Navy to prepare a more detailed Environmental Impact Statement ("EIS") and specifically complained that the Navy's EIA had failed to assess the risks associated with nuclear weapons storage. Id. at 142.

Upon review, the Supreme Court addressed the interrelationship of the twin goals of NEPA, public disclosure and informed decisionmaking, in the context of undisclosed national security information, concluding that "a federal agency might have to include environmental considerations in its decisionmaking process, yet withhold public disclosure of any NEPA documents, in whole or in part, under the authority of an FOIA exemption." 454 U.S. 139, 142-43. Thus, the Court held, inter alia, that

1 "whether or not nuclear weapons are stored at [the facility] is classified information exempt from
2 disclosure to the public under Exemption 1 [of FOIA]," 454 U.S. at 146, and concluded, in relevant part,
3 that "[u]ltimately, whether or not the Navy has complied with NEPA, 'to the fullest extent possible' is
4 beyond judicial scrutiny in this case." Id.

5 Similarly, in Hudson River Sloop Clearwater v. Dep't of Navy, 891 F.2d 414 (2d Cir. 1989),
6 several environmental and arms control groups challenged, in relevant part, the Navy's compliance with
7 NEPA with regard to its New York Harbor Homeport proposal. Hudson River, 891 F.2d at 416-17. The
8 Navy had prepared an EIS and a supplemental EIS on its Homeport proposal, both of which the agency
9 released for public review and comment, and additionally conducted an internal consideration of the
10 classified components of the proposal, which the agency did not disclose to the public, pursuant to FOIA
11 Exemptions 1 and 3, 5 U.S.C. §§ 552(b)(1), (b)(3). Id. at 416-417, 421. These classified components
12 related to the environmental impacts associated with the stationing and deployment of nuclear weapons
13 at the Homeport. Id. at 416-417. The plaintiffs claimed that this internal, non-public deliberation
14 violated NEPA. Id. The Second Circuit found that the Navy had properly invoked FOIA and that
15 "NEPA's mandates are 'essentially procedural'. . . and do not require that environmental concerns be
16 preferred to other appropriate considerations" and that "[c]learly, national security interests are among
17 those other considerations." Id. at 423 (internal citations omitted).

18 The rulings of Catholic Action and Hudson River Sloop are instructive in this case. They
19 illustrate that NEPA confers no right to obtain classified documents that relate to a NEPA analysis at
20 issue. In fact, in Hudson River Sloop, supra, the Second Circuit stated "that by giving [plaintiffs] access
21 to a classified report would defeat the equilibrium between the military's need for secrecy and the public's
22 right to have access to official information." 891 F.2d at 423, citing Catholic Action, 454 U.S. at 145.
23 See also Frost v. Perry, 919 F. Supp. 1459, 1467 (D. Nev. 1996) ("The need for a classified Declaration
24 . . . only underscores the national security issues . . . present in this lawsuit. Forcing Defendants to
25 divulge the contents of such a Declaration would only result in further harm to the national security."),
26 aff'd Kasza, 133 F.3d 1159.

27

28 Mtn for leave to submit classified decl for ex parte, in camera review
NRDC v. Gutierrez, Case No. 07-4771-EDL

Importantly, these cases acknowledge that a litigant cannot have access to certain information even to resolve the <u>merits</u> of its claims. In this motion, Defendants seek not to have the Court address the merits based on an <u>ex parte</u> review, which it has the authority to do, but merely to balance the equities in assessing the requested injunction based, along with other evidence, on limited classified information submitted for <u>in camera</u> and <u>ex parte</u> review.[6]/ Accordingly, Defendants' request for <u>in camera</u> and <u>ex parte</u> review is appropriate under these circumstances.

### D. IN CAMERA AND EX PARTE REVIEW IS NECESSARY BECAUSE NEITHER PLAINTIFFS NOR THE PUBLIC ARE ENTITLED TO CLASSIFIED NATIONAL SECURITY INFORMATION

As the Court knows, it cannot order the Navy to clear Plaintiffs' counsel if the Court decides not to review the classified information <u>in camera</u> and <u>ex parte</u>. Ultimately, the decision whether to reveal classified information, and to whom, must be reserved to the agency who designated the information as classified. <u>Dep't of the Navy v. Egan</u>, 484 U.S. 518, 527 (1988) (precluding review of security clearance decisions by an outside administrative board); <u>Dorfmont v. Brown</u>, 913 F.2d 1399, 1401 (9th Cir. 1990) (extending <u>Egan</u> and holding that federal courts have "no business" reviewing the merits of a decision by the Executive or his delegee to grant or revoke a security clearance); <u>Brazil v. Dep't of the Navy</u>, 66 F.3d 193, 195 (9th Cir. 1995) (applying <u>Egan</u> and <u>Dorfmont</u> to preclude review of the merits of a national security decision in a Title VII case). "The authority to protect [national security] information falls on the President as head of the Executive Branch and as Commander in Chief." <u>See</u>, e.g., <u>Egan</u>, 484 U.S. at 527 ("His authority to classify and control access to information bearing on national security and to determine who has access to that information flows primarily from this constitutional investment of power in the President and exists quite apart from any explicit Congressional grant"); <u>Webster v. Doe</u>, 486 U.S. 592 (1988); <u>Halperin v. Kissinger</u>, 807 F.2d 180, 188 (D.C. Cir. 1986) (observing the "executive's duty to preserve our national security"). Substantial deference is provided to the Executive Branch in conducting foreign affairs and protecting national security, and courts traditionally have been reluctant to intrude upon the authority of the Executive in military and national security affairs. <u>See</u>, e.g.,

---

[6]/ Defendants do not believe that resolution of the merits of Plaintiffs' claims will require consideration of classified information. Of course should that initial assessment be incorrect, this issue may have to be re-visited.

Mtn for leave to submit classified decl for <u>ex parte</u>, <u>in camera</u> review
<u>NRDC v. Gutierrez</u>, Case No. 07-4771-EDL

-10-

Egan, 484 U.S. at 530; Regan v. Wald, 468 U.S. 222, 243 (1984); Haig v. Agee, 453 U.S. 280, 292 (1981) ("Matters intimately related to foreign policy and national security are rarely proper subjects for judicial intervention.").

As courts have frequently recognized, in a variety of contexts, the judicial branch is ill-equipped to second-guess the government's assessment of secrecy classifications and the harm to national security attendant to the disclosure of classified information. See e.g., Dorfmont, 913 F.2d at 1401 ("When it comes to security matters, a federal court is 'an outside nonexpert body.'"); Brazil, 66 F.3d at 195 ("Thus the Court elected to leave the '[p]redictive judgment of this kind' to 'those with the necessary expertise in protecting [the sensitive material],' rather than in the hands of 'an outside nonexpert body.'") (quoting Egan, 484 U.S. at 529); Kiareldeen v. Ashcroft, 273 F.3d 542, 552 (3rd Cir. 2001) ("That the FBI would be unwilling to compromise national security by revealing its undercover sources, is both understandable and comforting. That a court would then choose to criticize the FBI for being unwilling to risk undermining its covert operations against terrorists is somewhat unnerving"); Halkin v. Helms, 598 F.2d 1, 9 (D.C. Cir. 1978) ("The courts, of course, are ill-equipped to become sufficiently steeped in foreign intelligence matters to serve effectively in the review of secrecy classifications in that area") (quoting United States v. Marchetti, 466 F.2d 1309, 1318 (4th Cir. 1972)); Students Against Genocide v. Dep't of State, 257 F.3d 828, 835, 837 (D.C. Cir. 2001) (deferring to government's assessment of national security harm so long as it is plausible); Haig v. Agee, 453 U.S. at 292; Halperin v. CIA, 629 F.2d 144 (D.C. Cir. 1980); Ellsberg v. Mitchell, 709 F.2d 51, 57 n.31 (D.C. Cir. 1983) (probability that a particular disclosure will have an adverse effect on national security is difficult for a judge to assess).

An order to disclose classified information to counsel would impermissibly interfere with the Executive Branch's exclusive role in making the national security determination of who should be provided access to classified materials. See Egan, 484 U.S. 518, 527 (1988) (holding that the decision to grant national security clearance is "a sensitive and inherently discretionary judgment call, [] committed by law to the appropriate agency of the Executive Branch.").

### E. CLASSIFIED INFORMATION SUBMITTED FOR IN CAMERA AND EX PARTE REVIEW WILL BE LIMITED AND NARROWLY TAILORED

The proposed Classified Declaration is narrowly-tailored to discuss the need for the SURTASS LFA. In this context, the Federal Defendants are in the unique situation of being able to provide the Court with the most up-to-date, accurate information about the current assessment of the threat to national security without the SURTASS LFA system and the need for the system.

On the other hand, because this classified information is so uniquely within the government's expertise, it is unlikely that the Plaintiffs could contribute much more than what they would submit in response to the unclassified declarations. Furthermore, the Court's ability to assess the weight that should be given to the classified documents after reviewing them minimizes any potential for Plaintiffs to be harmed by in camera and ex parte review of this limited information. Meridian, 939 F.2d at 745 (a plaintiff's "interests as a litigant are satisfied by the ex parte/in camera decision of an impartial district judge").

### F. CERTAIN SECURITY ARRANGEMENTS ARE NECESSARY

In cases where classified materials are submitted for review, Department of Justice regulations require government counsel to take all appropriate action to protect the information against unauthorized disclosure. See 28 C.F.R. § 17.17(a). These regulations set forth the minimum security measures necessary to protect classified information, and require the undersigned to ensure the Court's cooperation in adopting such measures. See 28 C.F.R. § 17.17(a)(2). In civil proceedings, the security procedures include the following:

1. Classified information is not to be disclosed or introduced into evidence without the prior approval of either the originating agency, the Attorney General, or the President. See 28 C.F.R. § 17.17(c)(2).

2. Attendance at any proceeding where classified information will be disclosed is to be limited to those persons with appropriate authorization to access this information, whose duties require knowledge or possession of the classified information to be disclosed. See 28 C.F.R. § 17.17(c)(3).

3. Aside from the Judge himself, access to classified information disclosed in this action is to be limited to those Court employees who have been determined eligible for such access by the Department of Justice Security Officer and who have been fully advised of all pertinent safeguarding requirements and their liability in the event of unauthorized disclosure. See 28 C.F.R. §§ 17.17(c)(3) and (c)(10); 28 C.F.R. § 17.46(c).

4. Classified documents are to be appropriately handled and stored in a manner consistent with Department of Justice security directives. See 28 C.F.R. §§ 17.17(c)(4) & (7).

5. In the event that the Court wishes to hear any testimony or oral argument which the government believes would include classified information, this testimony or argument is to be recorded and transcribed pursuant to the instructions of the Department of Justice Security Officer. See 28 C.F.R. § 17.17(c)(7).

6. Any notes or other documents prepared by the Court or its personnel that contain classified information are to be prepared, handled, and stored consistent with the directives of the Department of Justice Security Officer, see 28 C.F.R. § 17.17(c)(7), and retrieved at the close of the proceedings by the Department of Justice Security Officer for safeguarding or destruction. See 28 C.F.R. § 17.17(c)(9).

7. At the conclusion of the proceedings, all original classified information shall be returned to the Department of Justice or the originating agency, or placed under court seal for safekeeping by the Department of Justice Security Officer. See 28 C.F.R. § 17.17(c)(8).

In light of the above-referenced security precautions applicable to the Classified Declaration, Defendants will provide the Classified Declaration to a Department of Justice Security Officer for delivery to the Court. The Security Officer will contact Chambers directly upon the issuance of a decision on this motion, if favorable, to arrange for delivery of the material, will remain available to provide full and complete information regarding applicable security procedures, and will return the Classified Declaration to the secured safe at the conclusion of the Court's ex parte and in camera review.

//
//
//
//
//
//
//
//
//
//
//

Mtn for leave to submit classified decl for ex parte, in camera review
NRDC v. Gutierrez, Case No. 07-4771-EDL

-13-

**IV.    CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court grant their motion for leave to submit classified evidence in camera and ex parte.

Respectfully submitted this 6th day of November, 2007,

RONALD J. TENPAS
Acting Assistant Attorney General
United States Department of Justice
Environment & Natural Resources Division

JEAN E. WILLIAMS, Chief
KRISTEN GUSTAFSON, Trial Attorney
United States Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section

By:    /s/ Guillermo A. Montero
GUILLERMO MONTERO, Trial Attorney
MA Bar #660903
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
Ben Franklin Station, P.O. Box 663
Washington, D.C. 20044-663
Tel. (202) 305-0443/ Fax (202) 305-0274
Guillermo.Montero@usdoj.gov

Attorneys for Federal Defendants