becomes "relevant" for purposes of Section 1502.22(b)(3) if and when specific mission areas are proposed during the LOA application process. What Plaintiffs propose – a summarization of all existing data concerning global marine mammal density regardless of whether it corresponds to potential operation areas – is impractical and in no way required by NEPA. Inland Empire Public Lands Council v. U.S. Forest Service, 88 F.3d 754, 764 (9th Cir. 1996) ("NEPA does not require the government to do the impractical."). The updated literature reviews, discussion of uncertainty, and determination and disclosure of data gaps for marine mammals in the SEIS fully satisfies the requirements of 40 C.F.R. § 1502.22. See SEIS at P-3, 4-39, 10-85 and sub-chapter 3.2.

### b. The Navy adequately considered extended coastal exclusion zones

Plaintiffs' argument that the Navy should have, but failed to, conduct any meaningful analysis of increased coastal exclusion zones is also without merit. The analysis in the EIS, which included the study of three alternatives, examined a coastal exclusion zone of only 12nm. See EIS at 2-10 to 2-11. In response to this Court's finding that the Navy should have considered training in areas that present a reduced risk of harm to marine life, the Navy identified additional alternatives in its SEIS, including one that included a coastal standoff range of 25nm. See SEIS at 2-16, 4-70, 10-119. The 12nm and 25nm alternatives were then examined in comparative form, using the generic analytical methodology described at pages 14-15, supra, to determine the difference in potential impacts to marine mammals at each distance. Based on this thorough analysis, the Navy determined that potential risk actually decreases on average when LFA is operated at 12 nm as opposed to 25 nm from shore. SEIS at 4-79, 10-119; see also Clark Decl. ¶¶ 30-32. Further, the SEIS explains that the use of a larger coastal exclusion zone as contemplated by Alternative 3 would adversely impact the Navy's ability to achieve military readiness, since a much larger portion of the littorals would be restricted from the conduct of SURTASS LFA sonar operations. SEIS at 4-81. This thorough analysis fully complies with NEPA by providing a clear basis for choice between Alternatives 2 and 3. See 40 C.F.R. § 1502.14.

Moreover, the conclusions reached in the SEIS are in no way contrary to this Court's decision in the previous litigation. There, the Court concluded – in the context of adjudicating Plaintiffs' MMPA claims – that the Navy had acted arbitrarily by failing to "extend the coastal exclusion zone in all areas except for those few coastal areas where close to shore training is necessary." NRDC I, 279 F. Supp.2d.